[No. B221949. Second Dist., Div. Seven. Apr. 18, 2011.]

ANA MORA et al., Plaintiffs and Appellants, v.
BIG LOTS STORES, INC., et al., Defendants and Respondents.

## COUNSEL

Rudy, Exelrod, Zieff & Lowe, Alan B. Exelrod, Steven G. Zieff, David A. Lowe, John Mullan; The Feldman Law Firm, Lee R. Feldman, Alicia Olivares; Initiative Legal Group and Payam Shahian for Plaintiffs and Appellants.

Jackson Lewis, David S. Bradshaw, Cary Palmer, Heath A. Havey and Joel P. Kelly for Defendants and Respondents.

## OPINION

**PERLUSS, P. J.**—Putative class representatives Ana Mora, David Seals, Timothy Luddington and Richard Handrich filed a consolidated amended complaint on behalf of themselves and others similarly situated against their former employer, Big Lots Stores, Inc., and its affiliate, PNS Stores, Inc. (collectively Big Lots), operators of 178 closeout retail stores in California, asserting a cause of action for failure to pay overtime compensation and

various other wage-and-hour, meal and rest-time claims, as well as a claim for unfair business practices. Plaintiffs assert Big Lots uniformly misclassifies its store managers as exempt employees based on their job description alone rather than on consideration of actual work performed, which involves a significant amount of time on nonexempt tasks. The trial court denied their motion to certify a class of present and former Big Lots store managers finding the company does not operate its stores in a standardized manner and has no systematic practice of misclassification of managers. In light of the great latitude properly afforded the trial court in granting or denying class certification, we affirm, finding no abuse of discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Consolidated Amended Complaint*

In a consolidated amended complaint filed on March 2, 2007,[1] Seals, Mora, Luddington and Handrich, on behalf of themselves and others similarly situated, allege Big Lots, an Ohio corporation that owns and operates large, closeout retail stores in California, has intentionally and improperly designated certain employees as "exempt" store managers in order to avoid payment of overtime wages and other benefits required by the Labor Code and Industrial Welfare Commission (IWC) wage orders.[2] Plaintiffs allege, notwithstanding their designation as exempt, store managers spend the majority of their time during each workweek on nonexempt, nonmanagerial duties and do not exercise discretion and independent judgment in the performance of those managerial duties they do perform. They further allege store managers are required to work in excess of eight hours per day and more than 40 hours per week—"working overtime hours was and is required of all store managers to perform the tasks or meet the goals assigned to them"—yet they receive no payment for overtime wages or other required benefits. The complaint asserts causes of action for unpaid overtime, unpaid minimum wages, wages not paid upon termination, improper wage statements, missed

---

[1] Two separate class action complaints were filed against Big Lots. They were deemed related on January 9, 2007, and the consolidated amended complaint was filed two months later.

[2] Labor Code section 510, subdivision (a), generally requires payment of overtime compensation at one and one-half times an employee's regular rate of pay for any work in excess of eight hours in one workday or 40 hours in any one workweek. However, the IWC was authorized to establish exemptions from that requirement "for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption [and] customarily and regularly exercises discretion and independent judgment in performing those duties . . . ." (Lab. Code, § 515, subd. (a).) IWC Wage Order No. 7-2001 (Cal. Code Regs., tit. 8, § 11070) governs wages and hours, including overtime compensation, in the "mercantile industry," defined to include any business operated for the purpose of selling goods at retail (Wage Order No. 7-2001, § 2(H)).

rest breaks, missed meal breaks, reimbursement of expenses, loss of unused vacation time, failure to maintain required payroll records and unfair business practices.

The consolidated amended complaint defines a proposed class of "[a]ll persons who are or have been employed as Store Managers in Big Lots Stores in the State of California from September 1, 2002 until final disposition of this lawsuit," excluding for the period prior to February 4, 2004 individuals who had been class members in a prior overtime compensation action and who did not opt out from the settlement in that matter. The complaint alleges common questions of law and fact, including whether Big Lots misclassified class members as exempt from overtime laws and consequently failed to pay required overtime compensation, predominate over questions affecting only individual class members.

### 2. The Motion for Class Certification and Big Lots's Opposition

Following substantial discovery the putative class representatives moved to certify the class. In support of their motion the putative class representatives presented deposition testimony from Big Lots's designated corporate representative that the company has classified all its store managers in California as falling within the "executive exemption" of the governing IWC wage order, an exemption applicable to individuals who are "primarily engaged" in duties involving the management of a recognized subdivision of the business enterprise and who regularly direct the work of two or more other employees. (See IWC Wage Order 7-2001, § 1(A)(1)(a)–(f).) Relying on declarations from 44 putative class members,[3] the putative class representatives argued the evidence demonstrated that the basic job duties of store managers in California are the same regardless of location and that Big Lots runs all its stores in the state in a uniform and standardized manner. Strict compliance with corporate manuals and action plans, which set forth statewide policies and procedures, is required and such compliance is ensured by district managers, who supervise all store managers. In addition, training of store managers is standardized, and their job performance is evaluated on the same basis and on the same form regardless of purported store-to-store differences.

The putative class member declarations also averred that store managers are primarily engaged in nonexempt activities and routinely work more than 40 hours per week. As summarized in the memorandum filed in support of the motion for class certification, these declarations established managers

---

[3] Two additional declarations by former store managers were submitted in support of the motion. Big Lots objected these two individuals were not properly considered putative class members "because they separated before the court-ordered release date of February 4, 2004." The court sustained Big Lots's objections to the two declarations.

"typically spend more than 75% of their time performing the same physical labor and routine clerical tasks [as other, nonmanagerial 'associates' or employees], including stocking shelves, moving merchandise, working the cash register, building displays of merchandise, receiving and unloading trucks, ensuring that the store room is organized, and that Big Lots' shelves, bathrooms, aisles, and floors are clean."

The declaration of Andre Lark is illustrative. Lark, a store manager in Upland, California, from June 2004 to January 2006, declared, "I spent a significant majority of my time engaged in the same, non-managerial tasks as my non-management co-workers. That is, a significant majority of my time was spent performing such tasks as: Stocking shelves, unloading delivery trucks, unpacking boxes, assembling merchandise, displaying merchandise, responding to customers' inquiries regarding the location, availability and/or pricing of merchandise, returning dropped or discharged merchandise to its appropriate display location, cleaning the store, 'marking' or pricing the merchandise, and cashiering. I estimate that at least seventy-five percent of my time was spent in these non-managerial tasks. For the most part, when I was engaged in these non-managerial tasks I was not directing the work of other employees." Lark's declaration also explained that, throughout his employment, "I was required to perform my job duties in accordance with procedures and requirements dictated by Big Lots, such as those procedures and requirements listed in the Big Lots company manual and in Big Lots' training programs and materials. . . . I was occasionally allowed to deviate from these procedures, but only under unusual circumstances and only if I could justify such deviation." The declarations of the other store managers submitted in support of the certification motion were substantially similar to Lark's.

The putative class representatives also submitted the declaration of Carl C. Hoffman, Ph.D., an expert in labor force behavior and survey research. Dr. Hoffman explained that survey research techniques can be used to measure the proportion of time employees spend on individual components of their job. He expressed confidence that "if a qualified researcher were provided with access to the appropriate personnel information and information on store operations, a survey could be constructed to collect meaningful and reliable date on 1) how many overtime hours Big Lots Store Managers worked, and 2) what percentage of their overall work time the Big Lots Store Managers spend on tasks that are classified as 'exempt' managerial tasks, versus tasks that are classified as 'non-exempt' non-managerial tasks."

In opposition to the motion for class certification Big Lots submitted declarations from 141 putative class members, a number of district managers, deposition testimony from 23 of the 44 witnesses whose declarations had been submitted in support of the motion and expert opinion testimony based on in-store observations of 44 store managers.[4] This evidence, Big Lots contended, demonstrated a manager's duties at each Big Lots store and his or her experience as a store manager varies widely, notwithstanding they all share a job title and the same general job description. According to Big Lots's submission, store managers are the only exempt employees in each of the 178 retail stores in California. The stores range in size from 20,000 square feet to 60,000 square feet and employ from 20 to 60 sales associates depending on the store and the season. Each store manager performs different activities and spends different amounts of time on those activities depending on the needs of the store. Big Lots asserted the evidence showed it expects its store managers to be primarily engaged in exempt work and argued there is no evidence of any common policy or practice requiring managers to spend more than half their time on nonexempt activities. Whether particular managers are performing contrary to that expectation—that is, whether any individual manager has been misclassified as exempt—Big Lots contended, requires an individualized inquiry into the activities that were actually performed in each workweek (what they were and how much time was spent on them). As summarized by Big Lots, "[t]he actual time spent on exempt activities, depending on individual, store, season, and other factors, varies from 40% to 100%."

The deposition testimony from witnesses whose declarations had been submitted by the moving parties confirmed many individualized factors affect how the store manager does his or her job. Andre Lark, for example, when asked if a manager in a high volume store would have to be more hands-on than he was at a lower volume store, responded, "No, it's relative. It depends on the total situation. It depends on volume. It depends on store location. It depends on store size. It depends on the staff you have. . . . So, it's a mixture of everything."

Big Lots also presented an expert report and observation study conducted by Robert W. Crandall and a report by Lloyd W. Aubry, Jr. (a former Cal. State Labor Commissioner), based on his observations of store managers. Crandall described his work as "a direct observation study that captured the work activities of 40 randomly selected [store managers] over the course of a

---

[4] Big Lots also submitted an extensive "summary of evidence," which included tables and charts, as well as excerpts from the full declarations and deposition testimony filed with its opposition papers.

full workweek."[5] Crandall's opinion, based on his review of the data collected, was "there is wide variability in terms of where managers spend their time in the store, the percentage of time spent on various tasks, and the percentage of time allocated to performing managerial duties." Crandall also concluded, "the data demonstrates that approximately 2/3 of the 40 managers observed spent more than 50% of their time performing managerial tasks."[6] Based on his review of materials provided by Big Lots's counsel and his visits to four Big Lots stores, Aubry similarly concluded "the actual activities of the Store Managers and the time spent by these managers performing these activities, vary from manager to manager and store to store."

The putative class representatives filed a reply brief in support of their motion for class certification, reiterating their argument that the entire putative class of store managers has been misclassified as exempt by Big Lots, thereby denying them overtime benefits, without considering whether those employees were primarily engaged (that is, spent more than 50 percent of their time) in duties meeting the statutory definition for an exemption. They also responded to Big Lots's assertions they were not adequate class representatives and their claims were not typical of other store managers' because of alleged performance issues. With the reply brief the putative class representatives also filed additional excerpts from the 23 depositions of their manager witnesses, as well as a detailed response to Big Lots's summary of evidence and objections to portions of the other evidence submitted by Big Lots with its opposition memorandum.[7] Big Lots objected to portions of the supplemental evidentiary submission.

---

[5] Crandall further explained, "Observations were conducted using a continuous 'job shadowing' approach, where trained observers used computerized hand-held devices equipped with specialized software to capture all work activities performed by the subject manager over the course of a full workweek. . . . Using this approach, Resolution Economics observers captured over 99,000 work events while observing over 1,700 hours of manager work-time in connection with this study."

[6] Crandall acknowledged the decision whether activities qualify as "exempt" within the meaning of the Labor Code and Wage Order No. 7-2001 "are the province of the Court." However, for purposes of his analyses he necessarily had to categorize the tasks being observed as either managerial or nonmanagerial. Explaining one aspect of his methodology, Crandall noted "some tasks that were identified as non-managerial in the statistics above, could have the potential for being managerial, with the decision hinging on the manager's intent as he or she performed the task. For example, suppose a [store manager] was observed stocking alongside an associate. The [store manager's] intent could be to train the associate, it could be to coach or motivate the associate to work at a faster pace, or it could be that the [store manager's] intent is simply to stock. Since the observer was instructed to avoid communicating with the [store manager], they could not inquire as to why the [manager] was performing the task." According to Crandall, if "dual" task categories were included as managerial tasks, 80 percent of the 40 store managers observed were above the 50 percent managerial time threshold.

[7] Plaintiffs objected to Big Lots's summary of evidence as cumulative and not the best evidence and also on the grounds the summary misstated prior testimony and was unduly

### 3. *The Trial Court's Order Denying Class Certification*

In an order filed October 29, 2009 the trial court denied the motion for class certification. Initially, the court found the proposed class was both sufficiently numerous and ascertainable—that is, the definition of the proposed class described objective characteristics that would permit class members to identify themselves, the estimated class size of more than 400 store managers or former store managers would make joinder impracticable and class members could be readily identified without unreasonable expense or time by reference to Big Lots's own records. (See generally *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914 [107 Cal.Rptr.2d 761] ["[a]scertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata"]; *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 135 [50 Cal.Rptr.3d 135] [" '[c]lass members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records' "].)

The court determined, however, the putative class representatives had failed to meet their burden to establish a well-defined community of interest among proposed class members. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] ["[t]o obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members"].) "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Ibid.*) The court concluded the evidence proffered by plaintiffs fell short on each of the three required elements.

First, evaluating the persuasiveness of the declarations and deposition excerpts submitted by both sides, as well as the data and opinions from Big Lots's experts, the court found the activities performed by managers of Big

---

prejudicial and misleading. They also argued, as they do on appeal, the summary was an improper attempt to circumvent the page limit requirements for class certification motion papers. A single objection was filed collectively to the 147 store manager declarations submitted by Big Lots on the grounds of "undue prejudice, waste of time, and confusing and misleading (Cal. Evid. Code, § 352)." Another single objection was filed collectively to the 16 district manager declarations filed by Big Lots on the grounds of "undue prejudice, waste of time, and confusing and misleading (Cal. Evid. Code, § 352); lack of foundation (Cal. Evid. Code, §§ 403 & 405); hearsay (Cal. Evid. Code, § 1200)." Other objections were directed to Crandall's and Aubry's declarations and expert reports. All the objections were overruled.

Lots stores vary substantially based on the size of the store, the type of merchandise the store carries, the number of employees supervised, the time of year, the personality and judgment of the individual store manager, and additional, periodic challenges at particular stores (for example, remodeling). Accordingly, the court concluded common questions do not predominate because Big Lots does not operate its stores or supervise its managers in a uniform and standardized manner that would permit a determination of liability for misclassification of managers on a classwide basis. The court in a footnote rejected the putative class representatives' contention that any individual issues could be effectively managed by the results of Dr. Hoffman's research and analysis because "no such survey has been conducted."

Second, based on the wide variation in the work performed by managers from store to store, the product of "a myriad of individualized factors that affect the types of activities and the time they spend on particular tasks," the court ruled the putative class representatives' claims were not typical of the proposed class. Third, relying on evidence of what it described as the "checkered work histories" of the named plaintiffs, the court found them inadequate representatives for the absent class members. "The trial of their claims would necessarily focus on their own problematic employment histories, and would not present facts typical of the claims in the class."

Because plaintiffs had failed to establish a community of interest and adequacy of representation, the trial court also ruled substantial benefits would not result from class certification. (See *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*) ["trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants' "].)

Mora, Seals, Luddington and Handrich filed a timely notice of appeal. (See *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 435 [denial of certification motion to entire class is an appealable order]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732] [trial court order that "determines the legal insufficiency of the complaint as a class suit . . . is in legal effect a final judgment from which an appeal lies"].)

## DISCUSSION

### 1. *The Standard of Review for a Class Certification Order*

A trial court's ruling on a motion for class certification is reviewed for abuse of discretion. (*Sav-On, supra*, 34 Cal.4th at p. 326.) " 'Because trial

courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation]. . . . "Any valid pertinent reason stated will be sufficient to uphold the order." ' " (*Id.* at pp. 326–327; accord, *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268]; see also *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

Class actions are statutorily authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On, supra,* 34 Cal.4th at p. 326.) "As the focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, [the reviewing court] consider[s] whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Id.* at p. 327.) " '[T]his state has a public policy which encourages the use of the class action device.' " (*Id.* at p. 340; see *Aguiar v. Cintas Corp. No. 2, supra,* 144 Cal.App.4th at pp. 131–132.)

■ "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members." (*Sav-On, supra,* 34 Cal.4th at p. 326.) "The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Ibid.*; accord, *Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1089.) " '[T]his means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." ' " (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at p. 1108.)

## 2. The Trial Court Did Not Abuse Its Discretion in Denying Class Certification

### a. No improper criteria were used

As the Supreme Court held in *Sav-On, supra,* 34 Cal.4th at page 326, the central issue in a class certification motion is whether the questions that will arise in the action are common or individual, not the plaintiffs' likelihood of success on the merits of their claims. (Accord, *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1531 [87 Cal.Rptr.3d 518] ["trial court must evaluate whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment"].) The putative class representatives contend the trial court disregarded this standard, improperly focusing on the potential conflicting issues of fact that may arise on an individual basis rather than the common questions presented by their theory of recovery. To the contrary, the court employed the correct analysis and concluded the theory of recovery advanced—operational standardization imposed by Big Lots—was not supported by substantial evidence and thus not amenable to class treatment. No legal error was committed: "[A] class action will not be permitted if each member is required to 'litigate substantial and numerous factually unique questions' before a recovery may be allowed. . . . '[I]f a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate.' " (*Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 732 [108 Cal.Rptr.3d 15], citations omitted [affirming order denying certification on misclassification allegations where trial court found tasks performed by restaurant managers and time devoted to each task varied widely from restaurant to restaurant].)

To be sure, as the putative class representatives emphasize, Big Lots's California store managers were all uniformly classified as exempt employees without regard to store size, store volume or store location and store managers generally work more than 40 hours in a workweek. In addition, the store manager job description was uniform throughout Big Lots's California operations. Significantly, however, the putative class representatives do not contend the duties and responsibilities set forth in the store manager job description are nonmanagerial or fall outside the definition of exempt duties. As of July 1, 2006 the summary of the store manager position stated, "The Store Manager provides direction and support to store personnel regarding merchandising, financial management, inventory control, work performance and customer service."[8]

---

[8] As of August 2003 the position summary had stated, "The Store Manager (SM) provides direction and support to Store Assistant Managers, Associate Managers, Officer Coordinator, and designated Store Associates regarding merchandising, financial management, inventory

Rather, they contend Big Lots classified store managers as exempt based simply on the job description, ignoring the actual work performed in the stores. Based on testimony from Big Lots's designated corporate representative and declarations from 44 putative class representatives, they attempted to demonstrate those actual, nonexempt job duties are attributable to uniform corporate policies and practices (based on strict compliance with corporate manuals and action plans, as supervised by district managers and reinforced by standardized training). Had the trial court accepted this evidence, class certification would certainly have been proper. (See *Sav-On, supra,* 34 Cal.4th at p. 329 ["The record contains substantial, if disputed, evidence that deliberate misclassification was defendant's policy and practice. The record also contains substantial evidence that, owing in part to operational standardization and perhaps contrary to what defendant expected, classification based on job descriptions alone resulted in widespread de facto misclassification. Either theory is amenable to class treatment." (Fn. omitted.)]; *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1299 [105 Cal.Rptr.3d 443] ["[p]laintiff's 'theory of recovery' involves uniform policies applicable to the RSR's [(route sales representatives)] that are more amenable to class treatment"].)

In opposition to the class certification motion, however, Big Lots presented evidence, described above, that there exists no uniform corporate policy requiring store managers to engage primarily in nonmanagerial duties, that wide store-to-store variation exists in the types of work performed and amounts of time per workweek spent by managers on different activities, and that misclassification, when it occurs, is the exception not the rule. The trial court credited Big Lots's evidence, finding it "persuasive,"[9] and accorded little weight to what it described as "the identical and undetailed declarations of plaintiffs' witnesses."[10] Based on its assessment of the evidence presented,

---

control, work performance and customer services. The SM utilizes information in our company policy and procedures manuals, Mission, Vision and Values statements and our Business Initiatives when making all business decisions."

The complete text of the August 2003 and July 2006 job descriptions are attached as appendices.

[9] Referring to the declarations of putative class members submitted by Big Lots in opposition to the certification motion, the court stated, "These declarations, which are neither repetitive nor identical, and which are specific and supported by individual detail, establish that the operations of Big Lots stores, and concordantly the activities performed by the managers of those store[s], vary substantially based on the size of the store, the type of inventory or merchandise carried, and the number of employees working at a particular location, the personality and independent judgment of each store manager, the manager's experience, the time of year, and particular unique challenges (e.g., remodeling or opening of new stores) presented."

[10] In essentially rejecting the putative class representatives' evidentiary submission, the court observed that for more than half of the declarants the percentage of time estimated to

the court found it "plainly and inescapably established" that Big Lots does not "operate its stores or supervise its managers in a uniform and standardized manner."

In light of that finding and applying, as we must, the deferential standard of review articulated in *Sav-On, supra*, 34 Cal.4th 319,[11] we necessarily hold the trial court reasonably concluded the putative class representatives' theory of recovery was not susceptible of common proof. Our conclusion in this regard is substantially the same as reached by our colleagues in Division Five of this court in *Arenas v. El Torito Restaurants, Inc., supra*, 183 Cal.App.4th at pages 734–735 ("[T]he trial court did not improperly require plaintiffs to prove they could prevail on the merits of their claim. It simply considered whether plaintiffs' theory of recovery—misclassification based on job description—was, as an analytical matter, amenable to class treatment. . . . The trial court could, without abusing its discretion, conclude the requisite predominance was missing where there was insufficient evidence misclassification was the rule rather than the exception." [Citation omitted.]) and Division One of the First District in *Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1431 [47 Cal.Rptr.3d 83] ("[T]he presence of individual liability issues was only one factor, not the controlling factor, in the court's decision [(denying certification)]. The most important consideration, in the court's view, was the significant variation in the grocery managers' work from store to store and week to week. In light of that variation, the court evidently believed that very particularized individual liability determinations would be necessary.").

There is similarly no merit to the putative class representatives' contention the trial court committed legal error by failing to consider available procedural tools—specifically, the proposed survey described by Dr. Hoffman—that would permit successful management of individual claims if the class were certified. (See generally *Sav-On, supra*, 34 Cal.4th at p. 339 [" 'the trial court has an obligation to consider the use of . . . innovative procedural tools proposed by a party to certify a manageable class' . . ."].) Dr. Hoffman's

---

have been spent on nonmanagerial, nonexempt duties was different from the estimates given in deposition testimony or statements to third party prospective employers.

[11] In *Sav-On* the Supreme Court reviewed a trial court order granting class certification in an action alleging salaried managers had been misclassified as exempt based on their job descriptions and without regard to their actual work. The question, therefore, was whether the record contained substantial evidence to support the trial court's predominance finding. (*Sav-On, supra*, 34 Cal.4th at pp. 328, 334.) The question in the case at bar, in contrast, is whether substantial evidence supports the trial court's finding of lack of predominance of common issues of fact or law; we address the substantial evidence issue in the following part of this opinion.

survey, the putative class representatives insist, would have confirmed that class members were and continue to be categorically misclassified as exempt employees.[12] Even accepting that assessment as correct, as the trial court observed during the hearing on the putative class representatives' motion, its decision on certification must be based on evidence demonstrating whether common questions of fact or law predominate over individual questions. As of the time of the hearing (three years after the case was originally filed), Dr. Hoffman had not yet conducted a survey and his declaration describing the proper method for designing and implementing a scientific survey did nothing to refute the evidence presented by Big Lots that it did not operate its stores or supervise its managers in a uniform and standardized manner.

b. *Substantial evidence supports the court's findings*

The putative class representatives submitted a substantial volume of evidence in support of their certification motion—significantly more, they note, than had been presented by the plaintiffs in *Sav-On*. (See *Sav-On, supra,* 34 Cal.4th at pp. 328–329.) But, as discussed, the trial court largely discounted that evidence, commenting on the lack of detail in the putative class members' declarations and the similarity in the wording of many declarations, as well as the discrepancies between the former managers' deposition testimony and their declarations. The putative class representatives contend the court's rejection of their evidence constituted, in effect, an impermissible trial on the merits. Deciding whether common questions predominate in a retail store manager misclassification case, however, necessarily requires the court to evaluate the nature of the evidence presented purporting to show the defendant company operates its stores or supervises its managers in a uniform and standardized manner. (See *Keller v. Tuesday Morning, Inc.* (2009) 179 Cal.App.4th 1389, 1399 [102 Cal.Rptr.3d 498] [affirming order decertifying class of retail store managers: "The court observed that the managers, who filed declarations for the class, were impeached by their deposition testimony. This was a comment on the nature of the evidence, and did not constitute a consideration of the case on the merits, or a determination of witness credibility."]; see also *Arenas v. El Torito Restaurants, Inc., supra,* 183 Cal.App.4th at p. 734 [crediting defendants' evidence over plaintiffs', trial court concluded plaintiffs' theory of recovery was not amenable to common proof; "this court cannot now substitute its own judgment"].)

---

[12] Dr. Hoffman's declaration, however, did not suggest his survey would establish that, assuming the store managers were primarily engaged in nonexempt, nonmanagerial duties, the misclassification resulted from Big Lots's imposition of uniform corporate policies and practices.

Turning their focus from their own evidence to that presented by Big Lots, the putative class representatives argue the Crandall observational study—an important, but by no means exclusive, element of the court's decision—was methodologically problematic and flawed in its execution. First, repeating a criticism raised in the trial court, they contend the study suffered from the Hawthorne effect, "a phenomenon observed in social science research whereby the act of observation changes the behavior of the subjects observed, as when research subjects change their behavior to conform to what they perceive as the expectations of the researchers." (*People v. Vieira* (2005) 35 Cal.4th 264, 289 [25 Cal.Rptr.3d 337, 106 P.3d 990]; see Massaro, *Significant Silences: Freedom of Speech in the Public Sector Workplace* (1987) 61 So.Cal. L.Rev. 3, 55, fn. 228.) Big Lots responded to this attack by providing the transcript of Crandall's deposition testimony in which he explained he had established protocols to minimize, if not eliminate, the Hawthorne effect (for example, store managers were not told the reason the observational study was being conducted) and noting that the putative class representatives had not provided any evidence the validity of Crandall's study was in fact compromised by that phenomenon. Nothing in the record suggests the trial court failed to consider this challenge to the validity of the Crandall study when evaluating the parties' proof. (Cf. *Arenas v. El Torito Restaurants, Inc., supra,* 183 Cal.App.4th at p. 735 ["[w]e will not and do not presume that the trial court disregarded evidence in the record"].)

■ Next, the putative class representatives contend Crandall's conclusions are unreliable because he excluded from his study any store manager who was "under discipline," which they contend was "a significant sub-group of the initial sample."[13] This argument—made by counsel in the trial court and not supported by any counterdeclaration from Dr. Hoffman or any other statistician or survey expert—at most goes to the relative weight to be afforded Crandall's report. (See *People v. Cooper* (1991) 53 Cal.3d 771, 814 [281 Cal.Rptr. 90, 809 P.2d 865] [" '[c]areless testing affects the weight of the evidence and not its admissibility, and must be attacked on cross-examination or by other expert testimony' "].) It does not make the study itself valueless.

Finally, as discussed in footnote 6, *ante,* for purposes of his analysis Crandall categorized the tasks being observed as either managerial or non-managerial although he acknowledged whether an activity qualifies as exempt under the Labor Code and Wage Order No. 7-2001 is a mixed question of

---

[13] Crandall explained he had excluded two store managers who had been identified as poor performers from the initial sample of 46 because they had failed to follow Big Lots's performance expectations and, therefore, would not be indicative of a common, companywide policy.

fact and law. Although they do not suggest there were, in fact, any erroneous classifications, let alone demonstrate that such errors distorted the results of Crandall's study, the putative class representatives contend this constituted a flaw in Crandall's methodology that deprives the study of evidentiary significance. Once again, however, this hypothetical defect at most goes to the proper weight to be afforded the study.

■ The trial court, having examined all the evidence and considered the objections and criticisms voiced by the putative class representatives, could properly conclude there was insufficient evidence of a uniform corporate policy requiring store managers to engage primarily in nonmanagerial duties and, therefore, the theory of recovery was not amenable to common proof. We are not authorized to substitute our judgment for that of the trial court. (*Sav-On, supra*, 34 Cal.4th at p. 328 [" '[w]here a certification order turns on inferences to be drawn from the facts, " 'the reviewing court has no authority to substitute its decision for that of the trial court' " ' "].)[14]

c. *No reversible evidentiary error was committed*

i. *The putative class representatives' evidentiary objections*

The putative class representatives objected to the declaration of Big Lots's expert Lloyd Aubry (objection No. 3) as improper legal argument and Robert Crandall (objection Nos. 4 and 5) on the grounds Crandall failed to adequately establish his qualifications as an expert in study design, study administration or statistics and his techniques were neither reliable nor based on generally accepted scientific principles. The court overruled the objections; the putative class representatives now argue, in rather conclusory fashion, this was prejudicial error.[15]

---

[14] Because the trial court did not commit legal error or abuse its discretion in concluding common questions of fact or law do not predominate over individual issues, we need not consider the other grounds identified by the court—Seals, Mora, Luddington and Handrich's claims are not typical; they are not adequate class representatives and substantial benefits would not result from class certification—for denying the motion for class certification. (See *Sav-On, supra*, 34 Cal.4th at p. 327.)

[15] Citing *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255–256 [100 Cal.Rptr.3d 296] the putative class representatives insist a trial court's failure to explain its evidentiary rulings is reversible error. The court in *Nazir*, however, merely observed that the trial court's blanket sustaining of all but one of the defendants' 764 objections en masse and in a single sentence was "hardly a ruling" and failed to conform to the requirement that the court expressly rule on individual objections—a failing made all the more egregious because many of the objections stated no grounds at all. Here, in contrast, the court expressly ruled on each objection presented by the parties. Nothing more is necessary. (See generally Cal. Rules of Court, rule 3.1354(c) [proposed order submitted with written objections to evidence in

Much of Aubry's declaration was unquestionably proper: specifically, his explanation of how the Division of Labor Standards Enforcement, which he had headed, determines whether an employee is "primarily engaged" in duties that meet the test for the IWC's executive exemption from payment of overtime compensation and benefits and his opinion, based on the review of discovery materials and observations of, and interviews with, store personnel, that the actual activities of Big Lots's store managers vary from manager to manager and store to store. To be sure, Aubry arguably exceeded the proper bounds of expert testimony when he opined the case is not amenable to class treatment because an individualized inquiry will be necessary on a manager-by-manager basis. (Cf. *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884 [254 Cal.Rptr. 336, 765 P.2d 498] [" '[i]t is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide' "]; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 842 [199 Cal.Rptr. 830] ["[w]hile in many cases expert opinions that are genuinely needed may happen to embrace the ultimate issue of fact (e.g., a medical opinion whether a physician's actions constitute professional negligence), the calling of lawyers as 'expert witnesses' to give opinions as to the application of the law to particular facts usurps the duty of the trial court to instruct the jury on the law as applicable to the facts, and results in no more than a modern day 'trial by oath' in which the side producing the greater number of lawyers able to opine in their favor wins"].) However, the putative class representatives elected to object to the entire Aubry declaration, rather than specific portions they asserted were improper conclusions of law. It was not an abuse of discretion for the court to overrule that objection. (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885 [57 Cal.Rptr.3d 454] ["[w]e review a trial court's decision to admit or exclude evidence under the abuse of discretion standard"]; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476 [69 Cal.Rptr.3d 273] [same].)

■ As to Crandall's declaration and report, the trial court has broad discretion to determine whether a witness is competent and qualified as an expert and its determination will not be disturbed on appeal unless " 'a manifest abuse of that discretion' " is shown. (*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 701 [106 Cal.Rptr. 1, 505 P.2d 193]; see *Stevens v. Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877, 882 [123 Cal.Rptr. 171].) Although the putative class representatives argue Crandall failed to establish his qualifications to be an expert in study design or administration, he had previously been found qualified in state and federal courts to testify as an expert in labor studies and complex data analysis. No more was required for his testimony to be admissible. (See

connection with a summary judgment motion "must include places for the court to indicate whether it has sustained or overruled each objection"; no space for explanation of ruling is required].)

*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 38 [210 Cal.Rptr. 762, 694 P.2d 1134] [determinative factor as to whether witness is qualified as an expert is "whether the witness has sufficient skill or experience in the field so that his testimony would be likely to assist the jury in the search for the truth, and 'no hard and fast rule can be laid down which would be applicable in every circumstance.' [Citation.] Where a witness has disclosed sufficient knowledge, the question of the degree of knowledge goes more to the weight of the evidence than its admissibility."]; see also *Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 274 [7 Cal.Rptr.2d 101] ["work in a particular field is not an absolute prerequisite to qualification as an expert in that field"].)

The putative class representatives also argued, as discussed above, Crandall's methodology was flawed and his conclusions unreliable because he excluded from his study two store managers who were "under discipline" and also because he observed only current employees, rather than including former store managers in his analysis. These critiques at most go to the weight to be properly afforded Crandall's report, not its admissibility. (See *People v. Cooper, supra*, 53 Cal.3d at p. 814.)

The putative class representatives' final contention with respect to their evidentiary objections is that the trial court erred in permitting Big Lots to file its extensive "summary of evidence," which, they contend, is "an argumentative mix of inadmissible evidence and admissible evidence taken out of context," and, therefore, cumulative and unduly prejudicial. There can be little question the "summary" consists in large part of argument, rather than neutral synopsis, and thus circumvented the applicable page limit for an opposition to a class certification motion (see Cal. Rules of Court, rule 3.764(c)(2)). But the trial court certainly had discretion to permit the oversized filing. Moreover, the putative class representatives themselves filed nearly 70 pages of evidentiary responses and rebuttal to Big Lots's presentation with their reply memorandum, leaving no doubt any error was both mutual and harmless. (Cf. Evid. Code, § 353 [finding shall not be set aside "by reason of the erroneous admission of evidence unless: [¶] . . . [¶] (b) . . . the error or errors complained of resulted in a miscarriage of justice"].)

### ii. *Big Lots's evidentiary objections*

Big Lots filed 18 objections purportedly directed to the putative class representatives' supplemental evidence submitted with their reply memorandum, arguing the challenged excerpts of deposition testimony were produced

through misleading redactions and then used to mischaracterize the witnesses' testimony. The trial court sustained each of the objections. Seven of those rulings are challenged on appeal.

First, in their reply memorandum the putative class representatives characterized a passage from the deposition testimony of Big Lots's corporate designee, Brad Waite, as supporting their theory that Big Lots had classified all store managers as exempt without considering whether they actually performed tasks meeting the statutory definition for the exemption. The cited testimony, however, had previously been included within the nearly 40 pages of Waite deposition transcript filed with the putative class representatives' moving papers. Given the grounds for objection No. 1—"misstates testimony"; "mischaracterizes evidence"; "inadmissible secondary evidence"—it appears Big Lots was objecting to argument based on the testimony, not the testimony itself. Indeed, in its brief in this court, Big Lots asserts Waite's testimony (in its full form, not the purportedly misleading "snippet") was before the trial court and insists on sustaining its objection the court simply agreed the putative class representatives had mischaracterized that testimony. Argument is just that, not evidence. Evidence Code section 352 does not authorize the trial court to sustain an objection to counsel's characterization of testimony even if it is inaccurate. Nonetheless, no prejudice resulted from this incorrect ruling because the underlying evidence, as well as the putative class representatives' argument, repeatedly made throughout their moving and reply papers, were before the court and considered by it.

In similar fashion, objection Nos. 4, 5, 6 and 7, directed to the putative class representatives' supplemental evidence regarding deposition testimony of Robert W. Crandall, asserted various portions of that testimony—in particular, Crandall's discussion of the purported methodological flaws in his observational study—had been mischaracterized in the reply brief (once again, stating as grounds for the objections "misstates testimony," "mischaracterizes evidence," and "inadmissible secondary evidence"). Although it was error (and unnecessary) to have sustained evidentiary objections to counsel's discussion of the evidence, even though the court apparently agreed with Big Lots's evaluation of its accuracy, no prejudice resulted in light of the putative class representatives' success in presenting that argument elsewhere in their moving and reply papers.

The putative class representatives' final challenge to the trial court's evidentiary rulings relates to the exclusion of supplemental evidence concerning two of the putative class representatives' work histories. Because we do not reach the issue whether the named plaintiffs are adequate class representatives (see fn. 14, *ante*), we need not address this question.

## DISPOSITION

The order denying the motion for class certification is affirmed. Big Lots is to recover its costs on appeal.

Woods, J., and Jackson, J., concurred.

# APPENDIX

JOB DESCRIPTION

JOB TITLE: Store Manager

FLSA STATUS: Exempt
WAGE GRADE: 13, 14, 15
DEPARTMENT: Store Operations

JOB CODE: 60, 81, 61
REPORTS TO: District Manager
EFFECTIVE DATE: 08/2003

POSITION SUMMARY:

The Store Manager (SM) provides direction and support to Store Assistant Managers, Associate Managers, Office Coordinator, and designated Store Associates regarding merchandising, financial management, inventory control, work performance and customer service. The SM utilizes information in our company policy and procedures manuals, Mission, Vision and Values statements and our Business Initiatives when making all business decisions.

ESSENTIAL DUTIES & RESPONSIBILITIES (include but are not limited to the following):

1. Supervise the interviewing, selection, hiring and training of all associates.
2. Achieve and maintain a high level of customer service by ensuring customer engagement indicators are addressed including all CE11 items.
3. Achieve and maintain a high level of associate engagement through effective leadership including effective use of the Q12 items.
4. Approve/take appropriate disciplinary action on associates, including making recommendations for termination, in accordance with company guidelines.
5. Manage financial resources to achieve financial goals and plans.
6. Demonstrate the Values of Big Lots through all interactions with customers and associates.
7. Complete task assignments on time and correctly.
8. Manage all store processes to company standards. (i.e Dock to Stock, Merchandise Presentation)
9. Ensure that the appearance of the store's interior and exterior are maintained to standards.
10. Build and maintain positive customer and associate and peer relationships.

KNOWLEDGE, SKILLS AND ABILITIES:

1. High School Diploma, GED or equivalent work experience required. Must be 18 years of age.
2. Minimum of five years retail management experience preferred.
3. Mobility to move freely throughout store on a continual basis throughout the workday.
4. Ability to work at least 40 hours per week. Work schedule varies each week and includes working two nights per week and weekends.
5. Possess and demonstrate effective communication, presentation and interpersonal skills
6. Demonstrate effective decision-making and problem resolution skills.
7. Ability to maintain regular and predictable attendance.
8. Ability to effectively manage moderate to high degrees of stressful situations, including but not limited to:
    - peak business periods
    - multiple priorities – short deadlines
    - supervision of others
    - difficult or unpleasant situations
9. Basic PC skills required.
10. Ability to conduct facilitated discussions geared for associate training and development.

## Job Description

### Job Title: Store Manager

| | |
|---|---|
| FLSA Status: Exempt | Job Code: C00060,M00060,C00061, M00061,C00081,M00081 |
| Wage Grade/Level: 013,014,015 | Division: Store Operations |
| Reports To: District Manager | Department: Store Operations |
| Effective Date: 7/1/2006 | |

**Position Summary:**

The Store Manager provides direction and support to store personnel regarding merchandising, financial management, inventory control, work performance and customer service.

**Essential Duties and Responsibilities** (include but are not limited to the following):

1. Manages financial resources to achieve financial goals and plans.
2. Manages all store processes to company standards including freight processing, merchandise presentation and reconciliation of all cash and inventory transactions.
3. Supervises the interviewing, selection, hiring and training of all associates.
4. Approves and administers appropriate disciplinary action to associates, including making recommendations for termination, in accordance with company guidelines
5. Oversees the daily and weekly processing of payroll in LRM.
6. Ensures that the appearance of the store's interior and exterior are maintained to standards.
7. Responsible for implementing safety and shrink best practices.
8. Achieves and maintains a high level of customer service by ensuring that service standards are high and customer issues are quickly and efficiently resolved.
9. Achieves and maintains a high level of associate engagement through effective leadership.

**Knowledge, Skills and Abilities:**

1. High School Diploma, GED or equivalent work experience required. Must be 18 years of age.
2. Minimum of five years retail management experience preferred.
3. Mobility to move freely throughout store on a continual basis throughout the workday.
4. Ability to work at least 40 hours per week . Work schedule varies each week which includes working a retail schedule, nights, weekends and holidays.
5. Possess and demonstrate effective organizational, communication, presentation and interpersonal skills.
6. Demonstrate effective decision-making and problem resolution skills.
7. Ability to effectively manage moderate to high degrees of stressful situations, including but not limited to:
   * peak business periods
   * multiple priorities – short deadlines
   * supervision of others
   * difficult or unpleasant situations
8. Basic PC skills required.
9. Ability to conduct facilitated discussions geared for associate training and development.